## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARLA F. CRAWFORD ) | |
| 3074 Pineview Ct., NE ) | |
| Washington, DC 20018 ) | |
| ) | |
| Plaintiff, ) | Civil Action No.: |
| ) | |
| v. ) | |
| ) | |
| PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS ) | **Jury Trial Demanded** |
| 14201 School Lane ) | |
| Upper Marlboro, MD 20772 ) | |
| ) | |
| And ) | |
| ) | |
| PRINCE GEORGE'S COUNTY BOARD OF EDUCATION) | |
| 14201 School Lane ) | |
| Upper Marlboro, MD 20772 ) | |
| ) | |
| Defendants, ) | |

## COMPLAINT

Plaintiff, Marla F. Crawford, herein brings action for actions taken against her by the

Defendants, Prince George's County Public Schools and Prince George's County Board of

Education, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII");

## PARTIES, JURISDICTION & VENUE

1.  Plaintiff, Marla F. Crawford, is an employee of Prince George's County Public

Schools.[1]

---

[1] However, she has been on unpaid leave since August, 2017. In June, 2019, she was denied the right to return to work, since the employer did not grant her reasonable accommodation. Plaintiff has a separate claim on that issue currently with the EEOC.

2.   Ms. Crawford, at all relevant times, was Defendant's' "employee" within the meaning of 42 U.S.C. § 2000e(f), Md. Code Ann., State Gov't § 20-601(c)(1), and PG County Code § 2-186.

3.   Defendant Prince George's County Public Schools is a public school district in the State of Maryland, and has its offices at 14201 School Lane, Upper Marlboro, MD 20772.

4.   Defendant Prince George's County Board Of Education is the official policy-making and oversight body for Prince George's County Public Schools, and has its offices at14201 School Lane, Upper Marlboro, MD 20772.

5.   Defendant Board of Education is a corporate body that may sue and be sued.

6.   Defendant, Board of Education controls the educations policies of Prince George's County.

7.   Defendant Board of Education has control over matters of personnel, including the right to establish qualifications for employees and the right to dismiss employees for cause pursuant to Maryland Law.

8.   County Defendants are "employer[s]" within the meaning of 42 U.S.C. §2000e(b), Md. Code Ann., State Gov't § 20-601(d), and PG County Code § 2-186(a)(5). County Defendants are also an "educational institution" within the meaning of 20 U.S.C. § 1681(c).

9.   This action arises under the 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 42 U.S.C. § 12101, et seq. of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

11. The State of Maryland is where the actions complained of in the present case took place, where the employment records relevant to the unlawful practices are kept by the Defendant.

12. Therefore, this court has jurisdiction over these claims under 42 U.S.C. §§ 2000e–5 & –16 (2012).

13. Defendant resides in this judicial district, and a substantial part of the events giving rise to this action took place within this judicial jurisdiction.

14. Therefore, this court has proper venue pursuant to 29 U.S.C. § 1391 (2012).

**EXHAUSTION**

15. Plaintiff filed with the EEOC on or about January 18, 2018.

16. Plaintiff's EEOC filing was done within 300 days of the last discriminatory and retaliatory incident, in August, 2017.

17. Plaintiff received her Right to Sue letter from the EEOC, on or about October 14, 2019.

18. The Right to Sue Letter is dated October 10, 2019.

19. Plaintiff's Federal Complaint filing is done within 90 days of Plaintiff's receipt of the EEOC's Right to Sue letter.

**FACTS**

20. Plaintiff, African American, was hired by Defendants on or about September 17, 2014.

21. Plaintiff was hired on said date as a science teacher.

22. In July, 2015, Plaintiff transferred to a public school known as, "International High School at Largo, located at 505 Largo Road, Upper Marlboro, MD 20774.

23.  In 2016, Plaintiff filed a discrimination complaint through her union against practices she observed at the International School at Largo.

24. Between July, 2015 and August, 28, 2017, Plaintiff has been subjected to different treatment than her similarly situated non-African American counterparts.

25. Examples of this disparate treatment include: (a) the denial of time off requests; (b) similarly situated employees outside of her protected class having the ability to come in late and facing no loss of pay or discipline, compared to Plaintiff; (c)  similarly situated employees outside of her protected class having the ability to leave early and face no loss of pay or discipline, compared to Plaintiff; (d) similarly situated employees outside of her protected class having the ability to come in late and/or leave early and not being required to take vacation time to cover the lost time, compared to Plaintiff; (e) Plaintiff's evaluations were rated lower than her similarly situated co-workers outside of her protected class; (f) Plaintiff has been singled out for discipline, compared to her similarly situated co-workers outside of her protected class; and (g) Plaintiff has not been given the support for grants from management, compared to her similarly situated co-workers outside of her protected class, which prevented Plaintiff from obtaining grants.

26. In August, 2017, Plaintiff filed a complaint of race discrimination with her employer.

27. Joshua Davis (white) left work early every day for a year at 4:00 pm because he did not want to drive home in traffic. He took 2.5 hours off every week for a year and did not report his time nor was he ever threatened with discipline. He was paid for all of the missed time.

28. Sara Sanchaz (non African-American arrived at work late almost every day between a half hour and two and half hours late. She did this for two years. She did not report her time in the system and she was never threatened with discipline. She was paid for all of the missed time.

29. Klara Manan (non African-American) missed work throughout the year for two years to take classes for her non job-related degree. She practically took off every Wednesday during the summer. She did not report her time in the system and she was never threatened with discipline. She was paid for all of the missed time.

30. Dr. Alison Hanks-Sloan (Caucasian), the principal, missed work throughout the year. Staff even complained about her missing time. For nearly two years, she worked half-days.

31. In contrast, when Plaintiff requested time off for even, professional purposes, she was written up by Dr. Hanks-Sloan for disloyalty and failing to be dedicated to her job and the county.

32. Dr. Hanks-Sloan ridiculed Plaintiff for her medical condition of high blood pressure.

33. Dr. Hanks-Sloan authorized Plaintiff to commence an international program with students in Ghana for the 2016-2017 school year. She then cited Plaintiff for her work on the program, contending that it interfered with other school activities.

34. Plaintiff's 2016-2017 evaluation contended that Plaintiff did not submit her lesson plans. This was completely untrue.

35. Aforesaid evaluation contended that the Plaintiff did not identify learning objectives in her lesson plans. This was completely untrue.

36. Plaintiff's highest employment evaluation ever ranked her in the top 14% percent of all teachers in the County. Between 2015-2017, her employment evaluations were far lower. These lower scores and comments impacted her ability to obtain tenure and receive salary increases.

37. One of the grants Plaintiff worked on was one in which there would have been a math/science technology in creating a certain kind of graphic calculator. This project would

have been in conjunction with Texas Instruments and Veneer Software. However to complete the grant application, Plaintiff required the approval and support of her supervisor, Allison Hanks-Sloan, but she refused to support the Plaintiff.

38. In August of 2017, Dr. Hanks-Sloan indicated that any staff member that was trained in Restorative Justice did not have to participate in the Restorative Justice Professional Development.

39. Plaintiff provided Dr. Hanks-Sloan with a copy of her Restorative Justice Certification by the Virginia Supreme Court because she is certified to engage in Restorative Justice and Transformation within the Virginian prison system.

40. Dr. Hanks-Sloan told Plaintiff she needed to attend the training anyway.

41. Upon attending the professional development training, Plaintiff advised Dr, Hanks-Sloan of her mother's medical condition because only 20% of her heart was functioning and Plaintiff may need to leave to go home on emergency.

42. At the training, Dr. Hanks-Sloan sat next to Plaintiff an allowed Dr. Grant to become verbally aggressive towards Plaintiff and did not intervene. Dr. Hanks-Sloan sat there with a grin on her face. When Plaintiff proceeded to defend herself, Dr. Hanks-Sloan said, "not now Dr. Crawford."

43. Plaintiff left the training and did not return the next day.

44. Dr. Hanks-Sloan approached Plaintiff and advised her how she made everyone feel by not returning to the training the next day.

45. On August 28, 2017, she made a request to have professional leave to work with Senator Murray in Washington, D.C. on the Every Student Succeed Act (ESSA)in Washington,

D.C. with the understanding that she may not approve the leave and a conference line may need to be provided for Plaintiff to the work.

46. Upon attempting to come into work, the stress was too much and Plaintiff left.

47. Plaintiff contacted the Employees Assistance Program and was advised not to return to the school site and seek counseling.

48. Plaintiff has been in treatment for depression and anxiety since September 2017.

49. The Agency to this date has not completed the Report of Investigation.

## COUNT I
## DISCRIMINATION –RACE

50. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

51. Plaintiff's race is African-American.

52. The aforesaid discriminatory treatment by Defendant toward Plaintiff caused tangible harm to Plaintiff in that they affected the terms, conditions, and privileges of his employment.

53. Other similarly situated employees not of Plaintiff's race were not subject to the same conditions of employment as Plaintiff.

54. A causal connection exists between Defendant's discriminatory actions and Plaintiff's race.

55. Plaintiff's race was the motivating factor in the Defendant's decision to take the aforementioned actions against the Plaintiff.

56. Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000(e) et seq.

57. Defendant's conduct was malicious, willful, and intentional.

58. Plaintiff has suffered substantial economic and compensatory damages as a result of Defendants actions.

59. Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

60. Because of this unlawful conduct, Dr. Crawford suffered monetary damages, mental anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, loss of self-esteem, and other personal damages.

## COUNT II
## RETALIATION

61. Plaintiff hereby adopts all aforesaid paragraphs as if fully reproduced herein.

62. Plaintiff engaged in protected activity by making complaints about racial discrimination and racially discriminatory employment to Defendant.

63. Defendant was aware of Plaintiff's protected activity.

64. In response to and because of Plaintiff's protected activity, Defendant, by and through its agents, servants and employees took adverse action against Plaintiff by continuing to treat her unequally regarding work hours, leave, evaluations and grants.

65. The aforementioned co-workers did not engage in protected activity of complaining about discrimination.

66. The aforementioned co-workers did not have the aforesaid actions taken against them.

67. Defendants were motivated in whole or in part by Plaintiff's protected complaints.

68. Defendant's actions constituted a violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000(e) et seq.

69. Defendant acted willfully and with actual malice in terminating Plaintiff's job.

-8-

70. Plaintiff has suffered substantial economic and compensatory damages as a result of Defendants actions.

71. Plaintiff has also suffered anguish, anxiety, fear, helplessness, shock, humiliation, insult, embarrassment, depression, insomnia, and other damages as a direct result of Defendant's acts and omissions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

    a.   A declaratory judgment that the conduct of the Defendant challenged herein was illegal and in violation of the aforementioned laws;

    b.   Compensatory damages in an amount to be proved at trial, including compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described herein;

    c.   Reasonable attorneys' fees, expenses, and costs incurred by Plaintiff;

    d.   Upgrading of the Plaintiff's performance appraisals;

    e.   Such other and further relief as the Court may deem just.

**REQUEST FOR JURY TRIAL**

Plaintiff requests a trial by jury on all matters properly tried to a jury.

*Morris E. Fischer, Esq./s/*
_____
Morris E. Fischer, Esq.
MD Bar No: 26286
Morris E. Fischer, LLC
8720 Georgia Avenue Suite 210
Silver Spring, MD 20910
301-328-7631 Office
301-328-7638 Fax
morris@mfischerlaw.com
Counsel for Plaintiff