## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARLA F. CRAWFORD,                        *

      Plaintiff,                     *

v.                                  *

                                                 CIVIL NO. JKB-20-00048

PRINCE GEORGE'S COUNTY BOARD   *
OF EDUCATION,

      Defendant.                  *

\*    \*    \*.    \*    \*    \*    \*    \*    \*    \*·    \*    \*

## MEMORANDUM

Plaintiff Marla F. Crawford, proceeding *pro se*, brings two claims against Defendant Prince George's County Board of Education ("Board") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. (*See generally* Am. Compl., ECF No. 12.)[1]

Presently pending before the Court is Crawford's Motion for Summary Judgment (Mot. Summ. J., ECF No. 22) and the Board's Cross Motion for Summary Judgment (Cross Mot. Summ. J., ECF No. 37). Both Motions are fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth in this Memorandum, a separate Order shall issue denying Crawford's Motion for Summary Judgment and granting the Board's Cross Motion for Summary Judgment.

---

[1] Crawford's Complaint and Amended Complaint also name Prince George's County Public Schools as a defendant in this matter. (ECF Nos. 1, 12.) However, as noted in the Memorandum Opinion of August 16, 2021 (ECF No. 11), the school district is not an entity that can be sued. *See Adams v. Calvert Cnty. Pub. Schs.*, 201 F. Supp. 2d 516, 520 n.3 (D. Md. 2002) ("The school district, however, does not exist as a separate entity for purposes of suit."); *James v. Frederick Cnty. Pub. Schs.*, 441 F. Supp. 2d 755, 758 (D. Md. 2006) (stating that, instead of naming Frederick County Public Schools as a defendant, the plaintiff "should have named the Board"). Accordingly, Prince George's County Public Schools was removed as a defendant from this action and the Amended Complaint is construed as lodging claims solely against the Board.

## I.    *Factual Background*[2]

Crawford was hired as a science teacher for Prince George's County Public Schools ("PGCPS") on or about September 17, 2014. (Am. Compl. ¶ 24.) She was initially assigned to a ten-month teaching position at Oxon Hill Middle School. (Cross Mot. Summ. J. Mem. Supp. ¶ B, ECF No. 37-1.) In July of 2015, Crawford transferred to a 12-month teaching position at PGCPS's International High School at Largo ("IHS"). (Am. Compl. ¶ 26; Cross Mot. Summ. J. Mem. Supp. ¶ C.) Crawford, who is African American, alleges that, between July 2015 and August 2017, she experienced differential treatment as compared to her similarly situated non-African American colleagues. (Am. Compl. ¶ 27.) She states that she twice filed complaints of racial discrimination with her employer in 2016 and 2017. (*Id.* ¶¶ 27, 29.)[3]

Crawford alleges that she experienced disparate treatment based on:

(a) the denial of time off requests; (b) similarly situated employees outside of her protected class having the ability to come in late and facing no loss of pay or discipline, compared to Plaintiff; (c) similarly situated employees outside of her protected class having the ability to leave early and face no loss of pay or discipline, compared to Plaintiff; (d) similarly situated employees outside of her protected class having the ability to come in late and/or leave early and not being required to take vacation time to cover the lost time, compared to Plaintiff; (e) Plaintiff's evaluations were rated lower than her similarly situated co-workers outside of her protected class; (f) Plaintiff has been singled out for discipline, compared to her similarly situated co-workers outside of her protected class; and (g) Plaintiff has not been given the support for grants from management, compared to her similarly situated co-workers outside of her protected class, which prevented Plaintiff from obtaining grants.

---

[2] The factual background provided is largely drawn from facts that are undisputed (or indisputable) by the parties. To the extent it addresses disputed facts, the Court draws background mainly from the Amended Complaint (ECF No. 12), in view of the axiom that *pro se* pleadings are to be construed liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] Crawford does not provide the Court with either the dates of these complaints or evidence of the complaints themselves.

(*Id.* ¶ 28.)  With regard to the lack of flexibility in her work hours, Crawford points to four colleagues who she claims were able to arrive late or leave early from work without being required to "report [their] time in the system" or be "threatened with discipline."  (*Id.* ¶¶ 30–33.)[4]

Beginning on August 31, 2017, Crawford took a leave of absence from IHS.  (Cross Mot. Summ. J. Mem. Supp. ¶¶ GG, HH; Cross Mot. Summ. J. Ex. 9, ECF No. 37-11.)  She states that she went on leave "because the work environment was having an adverse impact on her physical and emotional health, which resulted in [a] diagnosis of depression and anxiety."  (Mot. Summ. J. ¶ 1.)  Crawford filed a formal charge of race discrimination against the Board with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about January 18, 2018.  (*Id.* ¶ 15; Cross Mot. Summ. J. Ex. 1, ECF No. 37-3.)  Crawford remained on leave until June of 2020, when she transferred to a 12-month teaching position at PGCPS's Academy of Health Science.  (Cross Mot. Summ. J. Mem. Supp. ¶¶ D, GG; Cross Mot. Summ. J. Ex. 26 at 120:10–11, ECF No. 37-28.)

On June 6, 2019, Crawford's health care provider signed a PGCPS "Certificate of Medical Release" authorizing her return to work beginning on June 11, 2019 and ending on February 3, 2020, with restrictions.  (Mot. Summ. J. Ex. D, ECF No. 22-1 at 4).  The form states:

> **IF [sic] medical restrictions are specified, your documentation will be referred to Transition to Work Program for a review.  You will NOT be authorized to return back to work until you have received notification from Transition to Work program that your restrictions will be accommodated.**

(*Id.*)  The form also requests that the treating health care provider "[i]dentify the functions employee is <u>unable</u> to perform."  (*Id.* (emphasis in original).)  Crawford's provider checked off the following restrictions: "Sitting long periods of time"; "Standing long periods of time"; "Driving"; and "Working less than 8 hours in a day."  (*Id.*)

---

[4] These colleagues are named as follows: Joshua Davis; Sara Sanchez; Kiara Manan; and Dr. Alison Hanks-Sloan, who was the principal of IHS at all times relevant to this matter.  (Am. Compl. ¶¶ 30–33.)  These are the only employees named by Crawford as comparators.

3

On June 11, 2019, PGCPS sent Crawford a letter stating that she was "eligible to return to work from an extended Leave of Absence effective June 11, 2019." (Mot. Summ. J. Ex. G, ECF No. 22-1 at 9.) But on June 12, 2019, PGCPS notified Crawford that it was rescinding her eligibility to return to work because it could not accommodate her restrictions. (Mot. Summ. J. Ex. H, ECF No. 22-1 at 10.)

On or about May 11, 2020, Crawford was notified that PGCPS had terminated her healthcare benefits. (Am. Compl. ¶ 65.) PGCPS stated that the benefits were terminated because Crawford had not made the required payments. (*Id.*) Crawford asserts that, although "[a]ll active employees with PGCPS have to pay only the employee contributions," she was required to pay "both the employer and the employees' portion of her healthcare benefits." (*Id.* ¶ 68.) Because she did not pay the employer portion of the health insurance costs, Crawford was advised that her healthcare was terminated effective March 1, 2020. (*Id.* ¶ 65, 66.)

Crawford brings two claims against the Board pursuant to Title VII: a racial discrimination claim (Count I) and a retaliation claim (Count II). (*See generally id.*)

## II.    Procedural History

Crawford filed a race discrimination charge against the Board with the EEOC on or about January 18, 2018 ("First EEOC Charge") and was issued a right-to-sue letter on October 10, 2019. (Am. Compl. ¶¶ 15, 18; Mot. Summ. J. Ex. L, ECF No. 22-1 at 15; Cross Mot. Summ. J. Ex. 1.) She filed a disability discrimination charge with the EEOC on or about July 1, 2019 ("Second EEOC Charge") and was sent a notice of dismissal and right-to-sue on August 5, 2019. (Mot. Summ. J. Ex. I, K2, ECF No. 22-1 at 11, 14.) Crawford filed a third EEOC complaint on September 5, 2019 ("Third EEOC Charge") for "retaliation for engaging in a protected activity in

violation of the Americans with Disabilities Act of 1990, as amended." (Mot. Summ. J. Ex. K1, ECF No. 22-1 at 13.)[5]

Crawford filed her initial Complaint in this Court, through counsel, on January 8, 2020. (ECF No. 1.) On February 28, 2020, Crawford's attorney filed a Motion to Withdraw As Counsel And For A Stay, stating that Crawford "signed a discharge form" with the understanding that Crawford "intend[ed] to pursue the case pro se or to obtain a different lawyer." (ECF No. 3.) It also stated that Crawford requested a stay on the case "pending the outcome of her [] EEOC complaint." (Id.) The Court granted the Motion to Withdraw on April 8, 2020. (ECF No. 4.)[6]

Crawford filed another EEOC complaint for "on-going discrimination as it pertains to her health care" on or about July 8, 2020 ("Fourth EEOC Charge") and was issued a right-to-sue letter on or about September 2, 2020. (Am. Compl. ¶¶ 20, 22; ECF No. 12 at 13.)[7] The Fourth EEOC Charge alleges "retaliation for [this] lawsuit" based on the termination of healthcare benefits. (ECF No. 12 at 13.)

On December 11, 2020, Crawford filed a Motion for Leave to Amend Complaint. (ECF No. 9.) The Court granted the Motion to Amend on August 16, 2021 (ECF No. 11) and Crawford filed the Amended Complaint the same day (ECF No. 12).

On April 18, 2022, Crawford filed her Motion for Summary Judgment. (ECF No. 22). Thereafter, on October 14, 2022, the Board filed its Cross Motion for Summary Judgment. (ECF No. 37.)

---

[5] The Court was not provided with information regarding a right-to-sue letter for the Third EEOC Charge.
[6] The Court stated in its August 16, 2021 Memorandum Opinion that the "request for a stay was not ruled on." (ECF No. 11 at 3 n.2.) However, the case was ultimately stayed between April 2022 and August 2022. (See ECF Nos. 21, 23, 31.)
[7] The Amended Complaint states that Crawford filed Second EEOC Charge on June 8, 2020, instead of July 8, 2020, as reflected on the EEOC complaint.

### III.     *Legal Standards*

Federal Rule of Civil Procedure 56 provides that a party can move for summary judgment on a "claim or defense—or the part of [any] claim or defense," provided it shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). If a party carries this burden, then the Court will award summary judgment, unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). If sufficient evidence exists for a reasonable factfinder to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment will be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

When faced with cross-motions for summary judgment, the Court considers each motion "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving all factual disputes in the light most favorable to the party opposing that motion. *Defs. of Wildlife v. N.C. Dep't of Transp.*, 762 F.3d 374, 392 (4th Cir. 2014) (internal quotations and citations omitted); *cf. Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 957 F. Supp. 2d 627, 632 (D. Md. 2013) ("When cross-motions for summary judgment demonstrate a basic agreement . . . concerning what legal theories and material facts are dispositive, they may be probative of the lack of a factual dispute.").

The Court is mindful, however, that Crawford is a self-represented litigant. A federal court must liberally construe pleadings filed by *pro se* litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does

6

not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### IV.   *Analysis*

The parties have demonstrated the absence of a genuine dispute of material fact, rendering summary judgment appropriate at this juncture. Crawford is unable to establish a prima facie case of racial discrimination or retaliation. Her Motion for Summary Judgment will therefore be denied. On its Cross Motion, the Board also demonstrated that Crawford is unable to establish a prima facie case as to either of her claims and is therefore entitled to judgment as a matter of law. Accordingly, the Court will grant the Board's Cross Motion for Summary Judgment.[8]

### A. *Allegations of Disability Discrimination*

As an initial matter, the Amended Complaint and Motion for Summary Judgment allege facts that suggest Crawford asserts a claim of disability discrimination or retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (*See* Am. Compl. ¶¶ 20, 64–68; Mot. Summ. J. ¶¶ 1, 4, 5, 6, 9.) However, the Amended Complaint does not assert a claim for disability discrimination or retaliation on its face. The two claims lodged in the Amended Complaint expressly charge the Board with race discrimination and retaliation. (*See* Am. Compl. ¶¶ 53–59, 69–76.)[9]

As noted, pleadings filed by *pro se* litigants are construed liberally. *See Erickson*, 551 U.S. at 94. However, district courts are not required to "conjure up questions never squarely presented

---

[8] Because the Motion and Cross Motion each seek summary judgment as to all Counts in the Amended Complaint, and address the same set of facts, the Court analyzes the two motions together.

[9] In Count II of the Amended Complaint, Crawford restarts the numbering of paragraphs at one. For convenience and clarity, the Court construes these paragraphs as ¶¶ 69–79. (*See* ECF No. 12 at 10.)

to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton,*
775 F.2d 1274, 1278 (4th Cir. 1985). On the whole, Federal Rule of Civil Procedure 8(e) requires
that "[p]leadings . . . be construed so as to do justice." This includes that the Court ensure that a
defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell
Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

Here, the Court cannot construe the Amended Complaint to raise claims for discrimination
and/or retaliation based on disability for two reasons. First, the allegations are not sufficient to
state such a claim. The Amended Complaint does not contain facts on which the Court could base
a disability-related claim. It states only that the principal of IHS "ridiculed Plaintiff for her medical
condition of high blood pressure" and that Crawford "has been in treatment for depression and
anxiety since September 2017." (*See* Am. Compl. ¶¶ 35, 51.) Although the Amended Complaint
alleges facts relating to Crawford's health insurance, (*see id.* ¶¶ 64–68), it does not allege any
connection between the termination of her health benefits and any alleged disability.

This implicates the Court's second concern: that the Board was not put on notice that
Crawford intended to raise a claim related to disability discrimination. Although the Amended
Complaint references 42 U.S.C. §§ 12101 *et seq.*, it states that the action arises under "42 U.S.C.
§ 12101, et seq. [sic] of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"),"
(Am. Compl. ¶ 9) and frames the claims exclusively around Title VII (*see, e.g., id.* ¶¶ 2, 8, 12). In
addition, both Counts state that they arise under Title VII of the Civil Rights Act of 1964, 42
U.S.C. § 2000e *et seq.* (*See id.* ¶¶ 59, 76.) Neither Count references the ADA, nor do they make
any reference to disability. The basis for a disability-related claim is predominantly raised in
Crawford's Motion for Summary Judgment, (*see* Mot. Summ. J. ¶¶ 4–6; Cross Mot. Summ. J. Ex.
1), which comes after the close of discovery (*see* ECF No. 19 at 1 (noting that "[a]ll depositions

and other discovery shall be completed by April 15, 2022")). Thus, the Board did not have notice of a disability-related claim until the summary judgment stage, at the earliest. This is also evidenced by the arguments raised in the Board's Cross Motion, which addresses race-based discrimination and retaliation claims and makes no mention of any disability claim. (*See generally* Cross Mot. Summ. J. Mem. Supp.) To construe the Amended Complaint as raising a claim for discrimination and/or retaliation based on disability would therefore contravene Rule 8's mandate that a defendant be given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Accordingly, the claims lodged in the Amended Complaint are evaluated only under the standards for discrimination on the basis of race and retaliation, pursuant to Title VII. Thus, the analysis in this Memorandum shall only consider those facts related to race-based discrimination and retaliation.

### B. Race Discrimination Claim

A Title VII racial discrimination claim lacking direct evidence is governed by the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of discrimination by showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). If a plaintiff establishes her initial case for a claim of discrimination, "the burden then shifts to the defendant to proffer a nondiscriminatory reason for the challenged action." *McCrea v. Johns Hopkins Univs.*, Civ. No. JKB-15-0579, 2016 WL 6166999, at *7 (D. Md. Oct. 24, 2016). If the defendant does so, "the burden finally returns to the plaintiff to show that the defendant's explanations are mere pretext." *Id.*

The Board correctly argues that Crawford has failed to meet her threshold burden of establishing a prima facie case of discrimination because she demonstrates only the first element required to make a prima facie case: her membership in a protected class. (Def. Opp'n to Mot. Summ. J. at 5, ECF No. 29.) The Court first considers whether Crawford suffered an adverse employment action, "an absolute precondition" to any employment discrimination suit. *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).

### 1. Adverse Employment Actions

The actions taken against Crawford, as alleged in the Amended Complaint and as the evidence in support of summary judgment demonstrates, do not rise to the level of "adverse employment actions." In order to prevail on a discrimination claim under Title VII, "the existence of some adverse employment action is required." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An adverse employment action is a discriminatory act that "adversely affects the terms, conditions, or benefits of a plaintiff's employment." *Id.* Of import here, an adverse employment action is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (internal quotation and citation omitted). Typical adverse employment actions include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999). However, "not everything that makes an employee unhappy is an actionable adverse action." *Settle v. Balt. Cnty.*, 34 F. Supp. 2d 969, 989 (D. Md. 1999) (internal quotation and citation omitted), *aff'd sub nom. Harris v. Earp*, 203 F.3d 820 (4th Cir. 2000), *and aff'd sub nom. Settle v. Balt. Cnty. Police Dep't*, 203 F.3d 822 (4th Cir. 2000).

Crawford alleges that she was subjected to racially motivated disparate treatment based on: (1) the denial of certain leave requests; (2) a lack of flexibility to arrive late or leave early; (3) lower evaluations; (4) being singled out for discipline; and (5) lack of support for grants from management.[10] (*See* Am. Compl. ¶ 28.) However, none of these actions constitute adverse employment actions for the purposes of Crawford's Title VII discrimination claim.

### a. Denial of Leave Requests

An employer's denial of a leave request can constitute an adverse employment action in some, but not all, situations. In particular, the denial must "affect[] the terms, conditions or benefits of [Plaintiff's] employment." *Bowen v. Md., Dep't of Pub. Safety & Corr. Servs.*, Civ. No. RDB-17-1571, 2018 WL 1784463, at *7 (D. Md. Apr. 12, 2018) (internal quotation and citation omitted); *compare Allen v. Rumsfeld*, 273 F. Supp. 2d 695, 706 (D. Md. 2003) (finding that denial of leave qualified as an adverse employment action because it "resulted in Plaintiff not receiving pay she otherwise would have received"), *with Gbenoba v. Montgomery Cnty. Dep't of Health & Hum. Servs.*, Civ. No. DKC-2003-2231, 2005 WL 1490008, at *10 (D. Md. June 23, 2005) (holding that being denied leave on two particular days did not constitute adverse employment action even though it "may have inconvenienced Plaintiff").

Crawford alleges that she was denied leave on August 28, 2017. (Am. Compl. ¶ 48; Pl. Opp'n to Cross Mot. Summ. J. at 9, ECF No. 40-1.) However, Crawford does not assert that she lost pay or that the denial of leave on August 28, 2017 otherwise altered any terms, conditions, or benefits of her employment with PGCPS. In fact, she states that she made a request "with the

---

[10] The Court acknowledges that the actions of the principal of IHS, rather than the Board itself, are at issue for the substantial portion of these allegations. (*See* Cross Mot. Summ. J. Mem. Supp. ¶¶ I, J, P (explaining that the principal is in charge of day-to-day operation of IHS, including evaluating employee job performance, supervising co-curricular programs, granting leave for absences up to 10 consecutive days, and accommodating flexibility of work hours).) However, because the Court concludes that Crawford cannot demonstrate a prima facie case of discrimination, the Court declines to analyze whether these actions are appropriately attributed to the Board.

11

understanding that" the leave may not be approved. (Am. Compl. ¶ 48.) And, she was able to

attend work that day, but left early because "the stress was too much." (*Id.* ¶ 49.) Other than her

inability to attend an opportunity for professional development, Crawford does not assert any

adverse impact as a result of the denial. As in *Gbenoba*, this denial "may have inconvenienced

Plaintiff," but is not an adverse employment action. *Gbenoba*, 2005 WL 1490008, at *10; *see also*

*Dailey v. Lew*, Civ. No. GLR-15-2527, 2016 WL 1558150, at *5–6 (D. Md. Apr. 18, 2016) (finding

no adverse employment action where a defendant imposed leave restrictions on plaintiff), *aff'd*,

670 F. App'x 142 (4th Cir. 2016).[11]

### b. *Flexible Working Hours*

Crawford alleges that her non-African American colleagues were able to arrive late to or

leave early from work without discipline, but she "did not receive" the same "flexible scheduling

as her co-workers." (Pl. Opp'n to Cross Mot. Summ. J. at 9; *see* Am. Compl. ¶¶ 28, 34.) However,

"an employer's refusal to allow a flex schedule does not qualify as an adverse employment action."

*Shivers v. Saul*, Civ. Civ. No. JKB-19-2434, 2020 WL 7055503, at *4 (D. Md. Dec. 2, 2020);

*accord Terry v. Perdue*, Civ. No. JKB-18-31, 2018 WL 4494883, at *5 (D. Md. Sept. 19, 2018)

(finding that an employer's denial of flexible scheduling did not constitute an adverse employment

action), *aff'd*, No. 20-2016, 2021 WL 3418124 (4th Cir. Aug. 5, 2021); *Carter v. Va. Dep't of*

*Game & Inland Fisheries*, Civ. No. MHL-16-0661, 2017 WL 4413192, at *13 (E.D. Va. Sept. 29,

2017) ("By alleging that [Defendant] refused to allow her to work a flex schedule or telecommute,

---

[11] In addition, the Board explains that Crawford was denied leave on this particular occasion because she was required to attend mandatory teacher training. (Cross Mot. Summ. J. Mem. Supp. ¶ EE.) Crawford alleges that the training concerned Restorative Justice and that the principal indicated that anyone already trained on the subject, which Crawford demonstrated she had been, did not have to participate. (Am. Compl. ¶¶ 41, 42.) Crawford also asserts that she was "the only trained staff member at [IHS] that had to sit in the training." (Pl. Opp'n to Cross Mot. Summ. J. at 9.) But, Crawford does not inform the Court of any other staff member who was trained in Restorative Justice and was permitted to skip the training; the Court is therefore unsure whether Crawford was the only trained member at IHS. Thus, Crawford also has not shown that she was treated differently from similarly situated employees outside the protected class.

[Plaintiff] fails to allege that she suffered an adverse employment action to support her race discrimination claim.").

### c. *Lower Evaluations*

Crawford alleges that "[b]etween 2015-2017, her employment evaluations were far lower" than they had been before, and that this "impacted her ability to obtain tenure and receive salary increases." (Am. Compl. ¶ 39.) However, "a poor performance evaluation 'is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment.'" *James*, 368 F.3d at 375 (quoting *Spears v. Mo. Dep't of Corr. & Hum. Res.*, 210 F.3d 850, 854 (8th Cir. 2000)); *see also Dortch v. Cellco P'ship*, 770 F. App'x 643, 647 (4th Cir. 2019) (per curiam) (reiterating the same). In *James*, the plaintiff similarly claimed that the lower performance rating he received "prevented him from being considered for a promotion, in addition to denying him opportunities for bigger bonuses and greater responsibilities." *James*, 368 F.3d at 377. The Fourth Circuit determined that because there was nothing in the record to suggest that the plaintiff's employer actually used the evaluation to his detriment, his claim that it "took him off track for promotion and formed a basis for denying him opportunities" was "conjectural" and did not constitute an adverse employment action. *Id.* at 378.

Similarly, there is no evidence before the Court that Crawford's lower performance evaluations had any impact on her employment with PGCPS. Indeed, Crawford did not present the Court with any of her performance evaluations, nor did she present evidence that any poor performance evaluation had an impact on her terms of employment. Therefore, Crawford's lower performance evaluations do not qualify as an "adverse employment action."

### d. Disciplinary Letters

It is well established that, without more, "neither [ ] written nor [ ] verbal reprimands qualify as adverse employment actions." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 429 (4th Cir. 2015); *see, e.g., Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011) (finding that a "letter of counseling" that offered constructive criticism and cautioned that discipline could follow, but did not implement any discipline, was not adverse employment action), *aff'd*, 465 F. App'x 274 (4th Cir. 2012); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) (determining that neither an oral nor written reprimand constitutes and adverse employment action unless it causes real, rather than speculative, employment injury); *Finnegan v. Dep't of Pub. Safety & Corr. Servs.*, 184 F. Supp. 2d 457, 461 (D. Md. 2002) ("[D]iscipline, without evidence that the verbal reprimands or that a counseling letter could lead to further disciplinary action, such as termination, does not constitute an adverse employment action."). Thus, Crawford's allegation that she was "singled out for discipline," (Am. Compl. ¶ 28), with no indication as to what the discipline was, or that any such discipline had a tangible impact on the conditions of her employment, does not constitute an "adverse employment action."

### e. Lack of Support for Grants

Crawford asserts that she "has not been given the support for grants from management . . . which prevented [her] from obtaining grants." (Am. Compl. ¶ 28.)[12] The Amended Complaint provides only one example for which the principal of IHS "refused to support" her application for a grant. (*Id.* ¶ 40.)[13] However, Crawford does not provide any additional detail as to the impact that this had, or could possibly have, on the terms, conditions, or benefits of her employment.

---

[12] Crawford does not define the sort of grants to which she makes reference.
[13] The Court primarily relies on the allegations made in the Amended Complaint because Crawford's Motion for Summary Judgment does not provide further argument or explanation. Thus, although this case is at the summary judgment stage, Crawford's Amended Complaint contains much of the information pertinent to this dispute.

Thus, Crawford fails to demonstrate that her management's lack of support for grants constitutes an "adverse employment action."

### 2. *Similarly Situated Employees*

In addition, Crawford appears to allege that the Board's actions with respect to her healthcare benefits demonstrated race-based discrimination. (*See* Am. Compl. ¶¶ 64–68.) Crawford alleges that, in contrast to all other "active employees," "PGCPS made [her] pay both the employer and employees' portion of her healthcare benefits." (*Id.* ¶ 68.)

As noted, an action impacting an employee's benefits can constitute an adverse employment action. *Boone*, 178 F.3d at 255. However, the Board argues that this action was taken because Crawford exhausted her ability to take paid leave, which is a standard policy about which Crawford was specifically warned. (Cross. Mot. Summ. J. Mem. Supp. ¶ II; Cross. Mot. Summ. J. Ex. 13, ECF No. 37-15.) This policy is also contained in the Negotiated Agreements between the Prince George's County Educator's Association, of which Crawford was a member during the relevant period (*see* Cross Mot. Summ. J. Mem. Supp. ¶ G), and the Board. (*See* Cross Mot. Summ. J. Ex. 7 at 22, ECF No. 37-9; Cross Mot. Summ. J. Ex. 8 at 21, ECF No. 37-10.)

Even assuming, *arguendo*, that the termination of Crawford's benefits constitutes an adverse employment action under these circumstances, Crawford did not demonstrate differential treatment from similarly situated employees outside of her protected class. *See Coleman*, 626 F.3d at 190. For this claim, a similarly situated employee would be one who also exhausted their paid leave. Although Crawford names four non-African American IHS employees in the Amended Complaint as comparators, she does so only with respect to her allegation regarding flexible work schedules. (*See* Am. Compl. ¶¶ 30–33.) Therefore, these named employees do not qualify as similarly situated persons for the purpose of the termination of benefits claim, because there is no

evidence to indicate that they exhausted their leave or had their benefits terminated. Crawford did not demonstrate the existence of a similarly situated colleague who received different treatment with regard to health benefits. In fact, Crawford does not allege that she was treated differently than non-African American employees, but rather that she was treated differently than other "active" employees, and this cannot sustain her claim of race-based discrimination. Thus, Crawford failed to make a prima facie case of discrimination based on the termination of her benefits.

### 3. Conclusion

Because Crawford failed to demonstrate that the Board took any adverse employment action against her, or that she was treated differently from any similarly situated employees, she failed to meet her burden to make a prima facie case of racial discrimination and her claim fails as a matter of law. For this reason, the Court will deny her Motion for Summary Judgment as to Count I of the Amended Complaint.

Additionally, the Court will grant the Board's Cross Motion for Summary Judgment because Crawford's failure to establish a prima facie case of discrimination entitles it to judgment as a matter of law.

### C. Retaliation Claim

Title VII prohibits an employer from "discriminat[ing] against any individual" because that individual "opposed any practice made an unlawful employment practice by this subchapter," or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C § 2000e-3(a). The *McDonnell Douglas*, 411 U.S. 792, burden-shifting framework also governs a claim for retaliation under Title VII lacking direct evidence. To establish a prima facie case of retaliation, a plaintiff must show: "(i) that [she] engaged in protected activity, (ii) that [her employer] took adverse action against [her], and (iii)

16

that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (internal quotation marks and citation omitted) (alteration in original).

Crawford alleges that she filed two complaints of racial discrimination with her employer in 2016 and 2017, respectively. (Am. Compl. ¶¶ 27, 29.) She also filed a formal charge of race discrimination against the Board with the EEOC on or about January 18, 2018. (*Id.* ¶ 15; Cross Mot. Summ. J. Ex. 1.) Thus, Crawford has demonstrated that she engaged in protected activity. However, Crawford's retaliation claim again fails because she does not demonstrate the existence of any adverse action taken against her.

An "adverse action" for the purpose of a Title VII retaliation claim differs from that for a discrimination claim. Unlike for a discrimination claim, a plaintiff claiming retaliation need not demonstrate that an adverse action affected her "terms or conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006). Instead, she must allege that the action was "materially adverse," meaning that it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citations omitted). The purpose of the material adversity standard is to "separate significant from trivial harms" in the "particular circumstances" of the plaintiff. *Id.* at 68–69. For example, "[a] supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight," but a decision to "exclud[e] an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id.* at 69. Despite this less stringent standard, the adverse action still must produce "an injury or harm." *Id.* at 67.

In support of the claim of retaliation, the Amended Complaint states only that the Board "took adverse action against Plaintiff by continuing to treat her unequally regarding work hours, leave, evaluations, and grants" and by "attempting to terminate Plaintiff's job." (Am. Compl. ¶¶ 72, 77.) However, neither constitutes an adverse action for a retaliation claim.

First, that Crawford continued to experience the same treatment before and after engaging in protected activity cannot support a claim for retaliation. This is because a charge of retaliation implies that an employer took a particular action *after* and *because* an employee engaged in protected activity. *See Hooven-Lewis v. Caldera*, 249 F.3d 259, 274 (4th Cir. 2001) ("[Events in question] could not be retaliatory, because [plaintiff's] contact with the EEO did not cause these acts of reprisal, but, instead, the alleged acts of 'reprisal' caused [plaintiff] to seek EEO relief."). Second, Crawford has made no showing that the Board attempted to terminate her job. Even if she had, however, a proposed termination does not constitute an adverse action. *See Wonasue v. Univ. of Md. Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013) (internal quotation and citation omitted).

Crawford appears to assert retaliation based on two additional actions taken by the principal of IHS: (1) providing Crawford with an "ineffective" evaluation for the 2018–2019 school year, while Crawford was on approved medical leave; and (2) issuing a warning for Crawford's failure to report to work on May 31, 2019, while Crawford was on approved medical leave. (Pl. Reply Mem. Supp. of Mot. Summ. J. ¶ D, ECF No. 32.) These arguments are raised for the first time in Crawford's Reply in support of her Motion for Summary Judgment and are raised again in her Opposition to the Board's Cross Motion. Even if liberal construction would permit the Court to analyze these assertions, they too would fail to allege adverse action. *See Wonasue*, 984 F. Supp. 2d at 492 (stating that neither an "Attendance Warning" nor a "formal letter of reprimand"

constitute an adverse employment action in a retaliation claim) (quoting *Rock v. McHugh*, 819 F. Supp. 2d 456, 470–71 (D. Md. 2011)); *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 832 (E.D. Va. 2016) (concluding that "reprimands without collateral consequences are akin to non-actionable snubbing, antipathy, and petty slights" and "cannot be characterized as 'adverse.'"), *overruled in part on other grounds by Bostock v. Clayton Cnty., Ga.,* —— U.S. ——, 140 S. Ct. 1731 (2020); *Stoyanov v. Mabus*, 126 F. Supp. 3d 531, 550 (D. Md. 2016) ("The letter of reprimand itself, even when assessed under the reasonable employee standard, is not an adverse employment action."); *But see Smith v. Bd. of Educ. of Prince George's Cnty.*, Civ. No. GJH-16-206, 2016 WL 4014563, at *5 (D. Md. July 26, 2016); *Howerton v. Bd. of Educ. of Prince George's Cnty.*, Civ. No. TDC-14-0242, 2015 WL 4994536, at *18 (D. Md. Aug. 19, 2015). Further, there is no indication that either of these actions "produce[d] harm or injury" to Crawford. *White*, 548 U.S. at 67. In fact, Crawford concedes that after she filed a grievance, the Board reversed the performance evaluation and changed it to "effective." (*See* Pl. Reply Mem. Supp. of Mot. Summ. J. ¶ D; Pl. Opp'n to Cross Mot. Mot. Summ. J. at 9.)

Finally, even if the Court determined that these qualify as adverse actions, Crawford still fails to demonstrate a causal relationship between her protected activity and these actions. Crawford's latest-in-time racial discrimination complaint occurred on or about January 18, 2018, (Am. Compl. ¶ 15), and both of these alleged retaliatory actions occurred well into 2019.[14] The fact that over one year lapsed before any alleged adverse action occurred negates an inference of causation. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021) ("Although there is no 'bright-line rule' for temporal proximity, courts within our Circuit have found that

---

[14] Crawford does not provide a date on which the principal gave her a performance evaluation of "ineffective," and the Board does not address this point. However, because the evaluation concerned the 2018–2019 academic year, it could not have occurred in close enough proximity to the racial discrimination complaint, even construed in the light most favorable to the plaintiff.

shorter lapses of time similar to the three-month period at issue in the case before us are insufficient to infer a causal relationship without other evidence of a causal link."); *Hooven-Lewis*, 249 F.3d at 278 ("A six month lag is sufficient to negate any inference of causation.").[15]

In the Fourth EEOC Charge, Crawford alleges that the Board terminated her health benefits in retaliation for her lawsuit. (*See* ECF No. 12 at 13.) Although the termination of an employee's benefits may generally qualify as an adverse action for the purpose of a retaliation claim, it does not qualify in light of Crawford's "particular circumstances." *White*, 548 U.S. at 69. On May 13, 2019, the Board informed Crawford that her sick leave would be exhausted as of May 30, 2019 and that if she did not apply for a leave of absence or for retirement, if eligible, she would be placed on "no pay status" and her benefits would be terminated. (Cross Mot. Summ. J. Ex. 13.) Crawford applied for and was subsequently granted an unpaid leave of absence until June 10, 2019 and was again informed of her responsibility to "pay 100% of the insurance premiums to maintain coverage." (Cross Mot. Summ. J. Ex. 10, ECF No. 37-12.) The same occurred when Crawford was approved for a leave of absence through August 15, 2019. (Cross Mot. Summ. J. Ex. 11, ECF No. 37-13.) Thus, the evidence in the record demonstrates that Crawford was warned of the possible termination, and the benefits were actually terminated, prior to her filing a lawsuit against the Board on January 8, 2020. The termination of benefits therefore cannot support a claim for retaliation.

In sum, Crawford cannot establish prima facie case of retaliation based on her complaints of racial discrimination because she has not alleged any adverse action taken against her. Accordingly, the Court will deny Crawford's Motion for Summary Judgment. In addition, the

---

[15] Crawford does not provide the Court with any explanation as to the causation element of her retaliation claim. Nevertheless, the Court—construing her claims broadly—assesses temporal proximity because "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action [is] sufficient evidence of causality to establish a prima facie case." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Court will grant the Board's Cross Motion for Summary Judgment, as Crawford's failure to establish a prima facie case entitles it to judgement as a matter of law.[16]

### V.    *Conclusion*

For the reasons stated above, a separate Order shall issue denying Crawford's Motion for Summary Judgment (ECF No. 22) and granting the Board's Cross Motion for Summary Judgment (ECF No. 37).

DATED this **2 1** day of March, 2023.

BY THE COURT:

James K. Bredar
Chief Judge

---

[16] As far as the Court can discern, the only other alleged adverse actions pertain to a possible claim for disability-based discrimination and retaliation. Crawford appears to allege that the Board engaged in retaliation when it rescinded her return-to-work status and when it terminated her benefits. (*See* Mot. Summ. J. ¶¶ 2–8; Pl. Reply Mem. Supp. of Mot. Summ. J. ¶ D; Pl. Opp'n to Cross Mot. Summ. J. at 12.) However, as discussed above, the Court cannot construe the Amended Complaint as raising claims based on disability status, and there is no indication that these allegations pertain to claims of racial discrimination.